NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

APR 18 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILD FISH CONSERVANCY; WILD
STEELHEAD COALITION;
FEDERATION OF FLY FISHERS
STEELHEAD COMMITTEE; WILD
SALMON RIVERS, DBA Conservation
Angler,

          Plaintiffs-Appellants,

  v.

NATIONAL PARK SERVICE;
JONATHAN B. JARVIS, in his official
capacity as the Director of the National Park
Service; UNITED STATES
DEPARTMENT OF THE INTERIOR;
SALLY JEWELL, in her official capacity as
the Secretary of the United States
Department of the Interior; UNITED
STATES FISH AND WILDLIFE
SERVICE; DANIEL M. ASHE, in his
official capacity as the Director of the
United States Fish and Wildlife Service;
UNITED STATES DEPARTMENT OF
COMMERCE; JOHN BRYSON, in his
official capacity as the Secretary of the
United States Department of Commerce;
NOAA FISHERIES SERVICE; SAMUEL
D. RAUCH III, in his official capacity as the
Acting Assistant Administrator for Fisheries

No.    14-35791

D.C. No. 3:12-cv-05109-BHS

MEMORANDUM[*]

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

of NOAA Fisheries Service; ROBERT ELOFSON, in his official capacity as the Director of the River Restoration Project for the Lower Elwha Klallam Tribe; LARRY WARD, in his official capacity as the Hatchery Manager and Fisheries Biologist for the Lower Elwha Klallam Tribe; DOUG MORRILL, in his official capacity as the Fisheries Manager for the Lower Elwha Klallam Tribe; MIKE MCHENRY, in his official capacity as the Fisheries Habitat Biologist and Manager for the Lower Elwha Klallam Tribe,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted March 9, 2017
Seattle, Washington

Before:  GRABER, IKUTA, and HURWITZ, Circuit Judges.

In a series of decisions, the Department of the Interior and the National Marine Fisheries Service ("NMFS") approved the use of hatcheries operated by the State of Washington and the Lower Elwha Klallam Tribe ("the Tribe") to restore Elwha River fish populations after a dam removal project.  The Wild Fish Conservancy and others (collectively, "the Conservancy") claim in this action that the Department and NMFS violated the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA") and that the Tribe's hatchery operations were

"taking" threatened fish in violation of the ESA. The district court partially vacated one of NMFS's decisions, but otherwise entered judgment against the Conservancy. We have jurisdiction of the Conservancy's appeal under 28 U.S.C. § 1291 and affirm.

1.     The district court correctly held that NMFS's decision to prepare an Environmental Assessment ("EA") instead of an Environmental Impact Statement ("EIS") before approving the hatchery programs under Limit 6 was neither arbitrary nor capricious. *See Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238–39 (9th Cir. 2005) (explaining standard of review). The Department had previously endorsed the use of hatcheries in the Elwha River in a 1996 EIS and decision. *See Or. Nat. Res. Council v. Lyng*, 882 F.2d 1417, 1424 (9th Cir. 1989) (finding supplemental EIS not required where previous EIS and comprehensive management plan "had already contemplated" agency actions "of the type and magnitude proposed"). The subsequent EA reasonably concluded, after thorough analysis, that the risks posed by the hatchery programs were minimal and that approving the programs would have no significant impact on the environment. *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376–77 (1989) (deferring to "substantial agency expertise" in "factual dispute"). The EA also reasonably concluded that the programs were not highly controversial, and the existence of "some" uncertainty did not require an EIS. *See Friends of Endangered Species, Inc.*

3

*v. Jantzen*, 760 F.2d 976, 986 (9th Cir. 1985) (finding no controversy where "[o]nly appellant and its two experts are critical" of proposed action); *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1011 (9th Cir. 2006) (noting EIS is not required "anytime there is *some* uncertainty").[1]  NMFS reasonably concluded that there would be no cumulatively significant impact on the environment.  NMFS was not required simultaneously to consider the effects of its possible future approval of other hatchery programs, as those programs had been submitted for NMFS review "on separate time schedules" and "nothing in the record suggests that the agency *intended* to segment review." *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1305 (9th Cir. 2003).[2]

2.     Because the EA satisfied NMFS's NEPA obligations, it also satisfied the Department's NEPA obligations.  The Department participated in preparing the EA, and the EA expressly considered the effects of the Department's funding

---

[1]     The Tribe had been using hatcheries long before NMFS's approval. *See Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1125 (9th Cir. 2012) ("If the proposed action does not significantly alter the *status quo*, it does not have a significant impact[.]").

[2]     The EA does not establish a precedent for approving those other programs. "EAs are usually highly specific to the project and the locale, thus creating no binding precedent." *In Def. of Animals v. U.S. Dep't of Interior*, 751 F.3d 1054, 1071 (9th Cir. 2014) (quoting *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1140 (9th Cir. 2011)).

actions.[3]

3.    The Conservancy's attack on the adequacy of the district court's remedy for the single deficiency it found in the EA is moot, because NMFS has since issued a revised EA, Limit 6 approval, and Biological Opinion, and the Conservancy does not challenge the revised EA.

4.    The district court correctly found the Conservancy's failure-to-consult claim moot.  After the complaint was filed, the Department consulted NMFS about its funding of hatchery programs and NMFS issued a Biological Opinion.  *See All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 600–01 (9th Cir. 2014) (finding failure-to-consult claim moot because consultation occurred).

5.    The district court did not err in finding that NMFS did not improperly segment consultation between its Biological Opinions.  The Opinions responded to two separate requests: the first was a request by the Department to reinitiate consultation on the dam removal project, and the second was a request by the State and the Tribe to approve the hatchery programs.  These projects were not so "interrelated" or "interdependent" as to require simultaneous analysis.  50 C.F.R. § 402.02.

---

[3]    The Conservancy conceded at oral argument that "to the extent that [the EA] was sufficient and actually took a hard look at the hatchery programs at issue, and alternatives to those hatchery programs, the Department of Interior would have satisfied its NEPA obligations."

6. The district court correctly found the Conservancy's initial claim that the Tribe was taking fish without authorization moot in light of NMFS's Limit 6 approval and Incidental Take Statement. *See Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."). The district court also correctly found that any claim against the Tribe for taking in violation of NMFS's authorization was barred for lack of notice. 16 U.S.C. § 1540(g)(2)(A)(i); *see Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 522 (9th Cir. 1998) (holding that citizen-plaintiff must "provide sufficient information of a violation so that the [defendant] could identify and attempt to abate the violation").

**AFFIRMED.**